**Sid WEINBERGER, Appellant**

v.

**Larry G. LONGER, Appellee.**

**No. 14–05–01285–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 8, 2007.

J. Michael Fieglein, Galveston, for appellants.

John C. Cunningham, Bellaire, for appellees.

Panel consists of Justices HUDSON, FOWLER and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Sid Weinberger, appeals a judgment in favor of appellee, Larry Longer, on Longer's fraud claim arising out of a construction contract. In five issues, Weinberger contends (1) the trial court lacked subject matter jurisdiction over Longer's claim, (2) the evidence is legally and factually insufficient to support the jury's findings on fraud and resulting damages, (3) the trial court erred by awarding attorney's fees, (4) the trial court erred by awarding exemplary damages, and (5) the trial court erred by granting "death penalty" sanctions against Weinberger. We affirm.

### I. BACKGROUND

Pursuant to an oral contract, Weinberger agreed to remodel Longer's vacation home. In return, Longer agreed to pay for all labor and materials plus pay

Weinberger a $20,000 fee upon completion. As the project progressed, Longer reimbursed Weinberger for labor and materials purportedly used on his home. Longer also purchased some materials directly.

After the project was completed, Weinberger sued Longer, alleging he did not pay some costs for labor and materials and the $20,000 fee. Longer filed a counterclaim, alleging breach of contract, DTPA violations, fraud, quantum meruit, and conversion. In essence, Longer alleged that Weinberger failed to perform the contract as promised, charged Longer for labor and materials used on Weinberger's other construction projects, and stole materials and furniture from Longer.

Before trial, the court assessed sanctions against Weinberger based on his failure to comply with two previous orders compelling discovery responses. The trial court dismissed Weinberger's claim with prejudice, struck Weinberger's answer to Longer's counterclaim, and precluded Weinberger from rebutting the counterclaim. Therefore, trial was held on Longer's counterclaim only.[1]

The jury found in Longer's favor on all claims submitted in the charge: breach of contract, DTPA violations, and fraud. Longer elected recovery on the fraud claim. In accordance with the verdict, the trial court entered judgment awarding Longer $86,000 in actual damages, $172,000 in exemplary damages, $15,000 in attorney's fees, costs, and interest.

## II. JURISDICTION OVER LONGER'S COUNTERCLAIM

In his first issue, Weinberger contends the trial court lacked subject matter jurisdiction over Longer's counterclaim because the amount in controversy exceeded the maximum jurisdictional limit

of a Galveston County Court at Law. A counterclaim, whether permissive or compulsory, must be within the trial court's jurisdiction. *Smith v. Clary Corp.*, 917 S.W.2d 796, 798 (Tex.1996). A counterclaim is not within the trial court's jurisdiction when the amount in controversy exceeds the maximum jurisdictional limit of the court. *Id.*

A statutory civil county court generally has jurisdiction when the amount in controversy exceeds $500 but does not exceed $100,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition. TEX. GOV'T CODE ANN. § 25.0003(c) (Vernon Supp.2006). Weinberger asserts that the amount in controversy with respect to Longer's counterclaim exceeded $100,000.

However, Government Code section 25.0862 contains additional jurisdictional rules exclusive to a Galveston County Court at Law and provides in pertinent part:

(a) In addition to the jurisdiction provided by Section 25.0003 and other law, and except as limited by Subsection (b), a statutory county court in Galveston County has:

(1) the jurisdiction provided by the constitution and by general law for district courts;

TEX. GOV'T CODE ANN. § 25.0862(a) (Vernon Supp.2006). Thus, section 25.0862 expands the jurisdiction of a Galveston County Court at Law to that of a district court, subject to certain exceptions which are inapplicable to this case. *See id.*; TEX. GOV'T CODE ANN. § 25.0862(b) (Vernon Supp.2006). A district court has jurisdiction even when the amount in con-

---

1. Although the trial court struck Weinberger's pleadings and precluded him from rebutting Longer's counterclaim, the trial court required Longer to prove liability and damages on the counterclaim.

troversy exceeds $100,000. *See* TEX. GOV'T CODE ANN. § 24.007 (Vernon 2004) (stating that district court has the jurisdiction provided by Article V, Section 8, of the Texas Constitution); TEX. CONST. art. V, § 8 (providing that district court has "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body.").

Weinberger contends section 25.0862 gives a Galveston County Court at Law the jurisdiction of a district court in matters involving the same subject matter, but the amount in controversy must still satisfy the monetary jurisdictional limits prescribed for county courts at law in general. We disagree. Under the plain language of section 25.0862, subject to certain exceptions, a Galveston County Court at Law has the same jurisdiction as a district court irrespective of the amount in controversy. *See* TEX. GOV'T CODE ANN. § 25.0862(a),(b). In fact, the Texas Supreme Court recently noted that section 25.0862 is an exception to the general rule that county courts at law lack jurisdiction when the amount in controversy exceeds $100,000. *See United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 401 n. 1 (Tex.,

2007).[2] Accordingly the trial court had jurisdiction over Longer's counterclaim. We overrule Weinberger's first issue.

## III. SUFFICIENCY OF THE EVIDENCE

In his second issue, Weinberger argues the evidence is legally and factually insufficient to support the jury's findings of liability and damages for fraud. When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). We credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* In conducting a factual sufficiency review, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding, and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

2. In comparison, Weinberger cites the following provision governing Dallas County Courts at Law: "In addition to the jurisdiction provided by Section 25.0003 and other law, a county court at law in Dallas County has concurrent jurisdiction with the district court in civil cases *regardless of the amount in controversy.*" *See* TEX. GOV'T CODE ANN. § 25.0592(a) (Vernon 2004) (emphasis added). Weinberger contends the Legislature intended to impose a monetary jurisdictional limit on a Galveston County Court at Law because it did not include the following phrase in section 25.0862: "regardless of the amount in controversy." However, the Government Code contains numerous jurisdic-

tional provisions exclusive to various county courts at law. *See* TEX. GOV'T CODE ANN. §§ 25.0041–25.2512 (Vernon 2004 and Supp. 2006). For example, the Bowie County Court at Law has "the jurisdiction provided by the constitution and general law for district courts," but does not have jurisdiction of "civil cases in which the matter in controversy exceeds $100,000 ..." *See* TEX. GOV'T CODE ANN. § 25.0212(a),(b)(5) (Vernon 2004). If we were to interpret section 25.0862 by comparing it to provisions governing other counties, we would refer the reader to the above-quoted language which distinguishes a Galveston County Court at Law from the Bowie County Court at Law.

## A. Jury's Finding On Fraud

In response to question number 9, the jury found that Weinberger committed fraud against Longer. The jury was instructed as follows regarding the elements of fraud:

Fraud occurs when:

a) A party makes a material misrepresentation;

b) The misrepresentation is made with the knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assurance;

c) The misrepresentation is made with the intention that it should be acted on by the other party; and

d) The other party relies on the misrepresentation and thereby suffers injury.

Misrepresentation means:

a) A false statement of fact; or

b) A promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

Fraud also occurs when:

a) A party fails to disclose a material fact within the knowledge of that party;

b) The party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth;

c) The party intends to induce the other party to take some action by failing to disclose the fact; and

d) The other party suffers injury as a result of activity without knowledge of the undisclosed fact.

Weinberger contends there is no evidence he made a misrepresentation or failed to disclose a material fact as required by the jury charge. Longer suggests, and the jury apparently found, that Weinberger made misrepresentations and/or failed to disclose material facts in essentially two respects: (1) by promising to perform the contract when he intended, at the time the promise was made, not to perform as promised; and (2) by charging Longer for materials and labor used on Weinberger's other projects.[3]

▇▇▇ Weinberger primarily challenges the finding as to this first aspect of fraud. The definition of misrepresentation submitted to the jury was consistent with the rule that a promise to do an act in the future constitutes fraud when made with no intention of performing the act. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986); *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Weinberger argues his alleged failure to perform the contract constitutes, at most, a breach of contract, not fraud, because there was no evidence of his "intent, at the time the promise was made, not to perform as promised." Failure to perform a contract, without more, is not evidence that the promisor did not intend to perform when the promise was made, but it is a circumstance to be considered with other facts when attempting to determine intent. *Spoljaric*, 708 S.W.2d at 435; *Eifert*, 125 S.W.3d at 124. While a party's intent is determined at the time he made the representation, intent may be inferred from his subsequent acts after the representation was made. *Spoljaric*, 708 S.W.2d at 434; *Eifert*, 125 S.W.3d at 124. Because intent to defraud is generally not susceptible to direct proof, it invariably must be proven by circumstantial evidence. *Spoljaric*, 708 S.W.2d at 435; *see Eifert*, 125 S.W.3d at 124. "Slight circumstantial evidence" of fraud, when considered with

---

**3.** We will later discuss the jury's findings on damages in more detail; however, we note that the findings on damages reflect the jury concluded Weinberger committed fraud in both respects.

the breach of promise to perform, is sufficient to support a finding of fraudulent intent. *Spoljaric*, 708 S.W.2d at 435.

Longer presented evidence to support both aspects of fraud cited above; however, the evidence overlaps somewhat. In particular, proof that Weinberger breached the contract was insufficient, without more, to demonstrate his intent not to perform. However, evidence that Weinberger charged Longer for materials and labor used on other projects *was* sufficient, without more, to show fraud and constitutes "slight circumstantial evidence" of Weinberger's fraudulent intent not to perform the contract.

## 1. Failure to Perform the Contract

Longer introduced ample evidence that Weinberger failed to perform the contract as promised. Longer testified that Weinberger represented he would remodel the home and oversee all the work and Longer would "have a nice house" and "love the house" when Weinberger was finished. However, at trial, Longer and his expert witness described extensive defects throughout the home in the work supervised by Weinberger.[4] In at least one instance, Weinberger instructed employees to perform work in a substandard manner.[5] In some instances, Weinberger used untrained workers to install particular products.[6] Longer made numerous complaints, but Weinberger never remedied the defects.

According to Longer, Weinberger not only performed defective work, but he then failed to complete the project. Specifically, the work overseen by Weinberger was performed from October 2002 to mid-December 2002. Then, no work was performed from mid-December 2002 to mid-January 2003, except some electrical installation supervised by Longer. Around mid-January 2003, when the project should have been finished, Longer began seeing "less and less" of Weinberger because he was preparing to work on another job. Thus, Longer had to assume supervision of the project. By the end of March 2003, Weinberger had "abandoned" the project, and Longer initiated steps to ensure completion. Longer estimated that Weinberger oversaw only about half of the project.

## 2. Charges for Other Projects

Longer also presented ample evidence that Weinberger charged him for materials and labor used on other projects.[7] Several months after Longer's project was completed, at Longer's request, Weinberger provided an "accounting," itemizing labor

---

4. These defects included faulty installation or other defective workmanship with respect to the following: trim on staircases, the front door, roof lines, walls, the concrete slab, plumbing, trim on the garage doors, an exterior siding called "Hardi-plank," a decking material called "Trex," ceiling lighting on the porch, deck railing, sheetrock, crown molding, framing, and pipes and wires near the exterior of the home. In addition, Weinberger failed to comply with certain government codes, impeding Longer's ability to obtain occupancy and completion certificates from the applicable authorities until the violations were remedied.

5. Longer testified that Weinberger instructed employees to build a wall onto the ground even after the employees informed him the wall should be constructed onto a raised concrete slab.

6. The workers who installed Hardi-plank and Trex were not experienced with these products, and they were installed so deficiently as to void their warranties.

7. Weinberger barely addresses the finding that he overcharged Longer, focusing instead on his argument there is no evidence of intent not to perform the contract. Regardless, we will discuss the evidence of overcharges in some detail because it also constitutes circumstantial evidence of intent not to perform.

and material costs for Longer's home. According to Longer, the accounting, which was introduced at trial, was "extremely" unusual. The title, "Account Transactions [Longer's Address]," indicated that all the entries applied to Longer's home. However, the accounting included entries that applied to other projects. In fact, Weinberger redacted some entries, acknowledging they applied to other projects, and then calculated the balance allegedly owed by Longer. Thus, the jury could have reasonably inferred that Weinberger charged these entries to Longer's home before being forced to produce the accounting and acknowledge they did not apply.

Longer testified that some additional entries, which had not been marked out by Weinberger, also applied to other projects. Longer introduced some of Weinberger's checks to various vendors and workers for costs attributed to Longer's home on the accounting. However, addresses for other projects are noted on some of the checks. Further, one check reflected lumber purchases, but Longer directly purchased all the lumber for his home.

Moreover, on the accounting, Weinberger had listed weekly payments to his employees who purportedly worked on Longer's home. Weinberger had indicated through these payments that five to eleven employees per week worked on Longer's home from October 2002 to mid-December 2002, and some employees worked there full-time during each week.[8] Longer testified that this representation was inaccurate because there were days during some of these weeks when they were "rained out." For instance, based on his hourly rate, the accounting shows that Melvin Paz worked on Longer's home about forty to fifty-five hours every week from October 2002 to December 2002, except one when he worked about thirty-three hours. However, Paz testified he did not work there everyday during this period because Weinberger sent him and five other employees, whose payments were listed on the accounting, to also work on three other projects.

Paz further explained that Weinberger used lumber removed from Longer's home on his other projects, and the employees removed nails from the lumber while it was still at Longer's home. Thus, Paz's testimony indicated that some of the employees' time charged to Longer's home was actually spent recycling lumber for other projects. The accounting also reflected that four employees worked on the home during a week in January 2003, when, according to Longer, no work was performed.

Finally, Paz testified that, pursuant to Weinberger's orders, employees took lumber delivered to Longer's home and used it on Weinberger's other projects. Weinberger concealed these actions by instructing the employees to place old lumber on top of the new lumber when hauling it away. Paz also confirmed that Weinberger stole a wrought iron table and four chairs from Longer and gave them to a worker. These actions constitute further circumstantial evidence of fraudulent intent.[9]

8. The accounting lists the amounts paid to each employee per week, not per day. However, one employee testified that he was paid $16 per hour; thus, the jury could have reasonably inferred that all employees were paid a comparable rate. Based on this rate, the paychecks reflect that some employees worked full-time during each week.

9. We note that the value of stolen lumber did not constitute part of the jury's damages calculations. As we explain below, to calculate damages, the jury was effectively asked about Longer's overpayments to *Weinberger.* However, Longer had purchased the lumber directly. Nonetheless, the jury could have considered the stolen lumber as evidence of fraudulent intent.

As the project progressed, Longer made various payments to Weinberger. Longer testified that after he reviewed the accounting, he determined that his total payments exceeded the costs properly attributed to his home. Therefore, the jury could have reasonably concluded that Weinberger failed to disclose material facts by charging Longer for unrelated labor and materials, which were unknown to Longer until he received the accounting. Moreover, considering all the above evidence, the jury could have reasonably concluded that, at the time he made the contract, Weinberger did not intend to perform as promised; instead, he intended to halfheartedly perform the contract while fraudulently obtaining payments and materials from Longer. Accordingly, we conclude the evidence is legally and factually sufficient to support the jury's finding that Weinberger committed fraud.

## B. Jury's Finding on Damages

In response to question number 10, the jury found that Longer incurred two types of damages proximately caused by Weinberger's fraud:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [Longer] for his damages, if any that were proximately caused by such fraud?

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that event or some similar event might reasonably result there from. There may be more than one proximate cause of an event.

a) Loss of benefit of the bargain    Answer:    [$36,000]

The difference between what [Longer] paid to [Weinberger] and the amount of the value of the materials and labor actually paid for and overseen by [Weinberger].

b) Remedial Damages    Answer:    [$50,000]

The reasonable and necessary costs for [Longer] to repair the materials and labor provided, performed and overseen by [Weinberger].

■ Weinberger contends the evidence is legally and factually insufficient to support the above award for two reasons. First, he argues that these damages, if any, were proximately caused by his alleged breach of contract, not by fraud. We disagree. The "Loss of benefit of the bargain" damages apparently reflect Longer's overpayments to Weinberger because of his fraud in charging Longer for materials and labor used on other projects. In addition, the "Remedial Damages" were not merely based on breach of contract. As we have discussed, Longer presented evidence that Weinberger committed fraud because he intended not to perform when he made the contract. The jury could have reasonably concluded that Longer incurred, or will incur, costs to repair defects because Weinberger did not intend to fully perform the contract.

■ Next, Weinberger argues there was no evidence to support the amount of damages awarded by the jury because the amount was speculative. Again, we disagree. We recognize, and Longer acknowledges, that exact damages were difficult to determine because Weinberger resisted Longer's informal requests for substantiation of charges and failed to fully respond to formal discovery requests. Nevertheless, Longer presented sufficient evidence of his damages to the extent possible, considering the paucity of information provided by Weinberger.

With respect to the $36,000 for "Loss of benefit of the bargain," Longer explained

that he calculated the amount he overpaid Weinberger for materials and labor. He began with the total of $191,019.45 reflected on Weinberger's accounting and then subtracted the following: $115,546.21 which Weinberger acknowledged applied to other projects; $16,836.83 representing additional charges for other projects and unsubstantiated charges; [10] and $20,260.72 in labor charges for rain-out days.[11] He arrived at a figure of $38,375.69 for costs properly attributed to his home. He had already paid $78,261.37 to Weinberger. Therefore, he overpaid Weinberger by $39,885.68. Based on his testimony, we conclude the evidence is legally and factually sufficient to support the $36,000 in "Loss of benefit of the bargain" damages.[12]

With respect to the $50,000 in "Remedial Damages," Longer introduced the detailed report of his expert describing the deficiencies, the recommended repairs, and the estimated costs for the repairs. In addition, the expert testified about the repair costs consistent with his report. The expert estimated the repairs would cost $80,135, including $58,190 for the exterior, $6,295 for the interior, and $15,650 for framing. Because the jury awarded less than the amount calculated by the expert, we conclude the evidence is legally and factually sufficient to support "Remedial Damages" awarded. Accordingly, we overrule Weinberger's second issue.

## IV. ATTORNEY'S FEES

In his third issue, Weinberger argues that the trial court erred by awarding attorney's fees because Longer elected recovery solely on his fraud claim and attorney's fees may not be awarded on a fraud claim. However, Weinberger fails to refer this court to any portion of the record where he preserved error on this com-

---

**10.** Longer explained that the $16,836.83 consisted of unsubstantiated charges and amounts for which corresponding checks showed a different address. On cross-examination, Longer outlined the items on the accounting comprising the $16,836.83, but the items outlined in his cross-examination are approximately $4,000 less than $16,836.83. However, the jury awarded approximately $4,000 less for "Benefit of the bargain" damages than the total amount calculated by Longer. Thus, the variance between $16,836.83 and Longer's testimony is immaterial. We note there is no direct evidence that unsubstantiated charges on the accounting were necessarily incurred for other projects. However, based on the evidence establishing Longer's assertion that some charges on his accounting definitely pertained to other projects, the jury could have reasonably inferred that Weinberger did not substantiate other charges because they also applied to other projects.

**11.** Longer's testimony regarding labor charges for rain-out days was not detailed. He specified the exact days on which work was rained out. However, Weinberger's accounting itemized the total payments to employees per week, not per day. Nevertheless, Longer's calculation of overpayments for labor is sufficiently supported by determining the percentage of time per week that work was rained out, then calculating the corresponding percentage of total payments to employees for that week. We cannot conceive of any other or more precise method by which the jury could have calculated overpayments for labor in light of the limited information provided to Longer.

**12.** Longer's expert also calculated overpayments by determining the difference between the total amount Longer expended on the project, including his payments to Weinberger *and* his direct purchases, and value of the work actually performed by Weinberger. However, the jury was instructed to consider the difference between the amount Longer paid to *Weinberger* and the amount of materials and labor actually paid for and overseen by Weinberger. Therefore, the expert's calculation, which included all amounts Longer expended on the project—not just payments to Weinberger, did not necessarily support the "Benefit of the bargain damages" awarded by the jury. Regardless, Longer's damages calculation is sufficient to support the jury's award.

plaint. To preserve error, a party must have presented the complaint to the trial court by timely request, objection or motion, sufficiently specific to make the trial court aware of the complaint. *See* TEX. R. APP. P. 33.1(a)(1).

In response to question number 8, the jury found that $15,000 was "a reasonable fee for the necessary services" of Longer's attorney. Weinberger complained of attorney's fees in his motion for judgment notwithstanding the verdict ("JNOV") and at the hearing on the motion. In the motion, he stated, "The Court must disregard the findings of the jury as to [Question 8] inasmuch as the foundation damages were not properly determined by the jury." Although this contention is unclear, we cannot interpret it as a complaint that Longer would be precluded from an award of attorney's fees if he recovered solely on the fraud claim.

At the JNOV hearing, Weinberger somewhat clarified his contention. He asserted that the "court must disregard the findings of the jury to [Question 8] inasmuch as the foundation damages were not properly determined by the jury *as previously argued*." (emphasis added). In his previous argument, he challenged only the jury's findings on breach of contract and DTPA violations on the grounds that the questions were improper.[13] Thus, Weinberger apparently requested the trial court to disregard the attorney's fees finding because the underlying questions regarding breach of contract and DTPA damages were improper. When he subsequently addressed the fraud findings, he failed to argue that Longer was not entitled to attorney's fees if he elected recovery solely on the fraud claim or otherwise mention attorney's fees.

Therefore, in his motion for JNOV and at the JNOV hearing, Weinberger did not sufficiently apprise the trial court of the complaint that he now raises on appeal. An objection in the trial court that is not the same as the issue urged on appeal presents nothing for review. *See Centurion Planning Corp. v. Seabrook Venture II*, 176 S.W.3d 498, 508 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *Holland v. Hayden*, 901 S.W.2d 763, 765 (Tex. App.-Houston [14th Dist.] 1995, writ denied). Accordingly, Weinberger did not preserve his issue through his motion for JNOV. *See Holland*, 901 S.W.2d at 765 (holding party's challenge in trial court to sufficiency of evidence to support award of attorney's fees did not preserve appellate complaint regarding double award of attorney's fees).

The day after the hearing, the trial court overruled the motion and entered judgment. Although Weinberger timely raised several objections to the judgment in a motion for new trial and at a hearing on the motion, he presented no challenge to the award of attorney's fees. Finally, he did not file any other post-judgment motions relative to the relief awarded in the judgment, such as a motion to modify. Consequently, Weinberger waived his complaint by failing to raise an objection in the trial court. *See Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Utility Dist.*, 198 S.W.3d 300, 317–18 (Tex.App.-Texarkana 2006, pet. denied) (holding party waived one of two appellate grounds for challenging attorney's fees by failing to raise it in the trial court); *City of Port Isabel v. Shiba*, 976 S.W.2d 856, 860–61 (Tex.App.Corpus Christi 1998, pet. denied) (holding party waived complaint that trial court assessed attorney's fees in absence of statutory authority by failing to object

---

**13.** Weinberger challenged the findings on breach of contract and resulting damages on the ground there was no finding as to the "nature" of the contract. He challenged the finding on DPTA damages on the ground the question did not limit the damages to those for which his conduct was a producing cause.

in trial court). We overrule his third issue.

## V. EXEMPLARY DAMAGES

In his fourth issue, Weinberger contends the trial court erred by awarding exemplary damages because Longer failed to prove a fraud claim and exemplary damages may not be recovered on a breach of contract claim. Because we have rejected Weinberger's challenge to sufficiency of the evidence supporting the fraud claim, we also overrule this issue.

## VI. "DEATH PENALTY" SANCTIONS

In his fifth issue, Weinberger argues the trial court erred by imposing "death penalty" sanctions due to his failure to comply with its orders compelling discovery.

### A. Failure to Comply with the Trial Court's Orders

Longer initially served interrogatories and a first request for production, and Weinberger served some responses. Longer thereafter served a second and a third request for production, but Weinberger failed to respond. Longer filed a motion to compel, asserting Weinberger's responses to the interrogatories and first request for production were inadequate and his responses to the second and third requests for production were past due.

14. On October 18, 2004, the trial court signed an order reflecting its oral ruling.

15. In this sanctions order, the trial court stated that it had twice ordered Weinberger to supplement his interrogatory answers and supplement and respond to Longer's *first* and *second* requests for production. However, the trial court had also previously ordered Weinberger to respond to the *third* request for production. It is unclear whether the failure to mention the third request for production in the final sanctions order was an oversight or whether the trial court found that the refusal to respond to the third request for production did not justify sanctions. However, in the

On August 25, 2004, the trial court granted the motion and ordered Weinberger to supplement certain responses to the interrogatories and first request for production, and respond to the second and third requests for production, within ten days. The trial court also stated that it would consider a motion for sanctions if Weinberger did not fully comply. In spite of this order, Weinberger failed to comply.

Thereafter, Longer filed a motion seeking sanctions, including an order striking Weinberger's pleadings. At a hearing on October 6, 2004, the trial court imposed sanctions by awarding Longer his attorney's fees but did not strike Weinberger's pleadings.[14] Instead, the trial court allowed Weinberger fifteen days to comply with its previous order and stated that failure to comply would result in stricken pleadings.

Again, Weinberger failed to comply, and Longer requested sanctions. On November 9, 2004, the trial court signed a sanctions order, dismissing Weinberger's claim with prejudice, striking his answer to Longer's counterclaim, and precluding him from rebutting the counterclaim.[15] Four months later, Weinberger filed a motion to reinstate, claiming he had since complied with the discovery orders. After conducting a hearing, on March 10, 2005, the trial court denied the motion.[16]

third request for production, Longer sought only Weinberger's tax returns and associated documents for relevant years. In the interrogatories and first and second requests for production, Longer sought information material to the merits of the claim and counterclaim. Even if the trial court based its sanctions order only on Weinberger's refusal to supplement and/or respond to the first and second requests for production, as we will discuss, the trial court did not abuse its discretion.

16. Weinberger sought a writ of mandamus from the First Court of Appeals, but his application was denied.

## B. The Sanctions

We review a trial court's decision to sanction a party under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex.2004). A trial court abuses its discretion when its ruling is arbitrary and unreasonable without reference to any guiding rules and principles. *Id.* at 838–39. Texas Rule of Civil Procedure 215.2 allows a trial court to enter "just" sanctions for a party's failure to comply with a discovery order or request, including the following types of sanctions, as entered in this case: "an order refusing to allow the disobedient party to support or oppose designated claims or defenses"; and "an order striking out pleadings or parts thereof . . . or dismissing with or without prejudice the action or proceedings or any part thereof." TEX. R. CIV. P. 215.2(b)(4), (5).

There are two components to measuring whether sanctions are just: (1) a direct relationship must exist between the offensive conduct and the sanctions imposed; i.e., just sanctions must be directed against the abuse and toward remedying the prejudice caused the innocent party; and (2) the sanctions must not be excessive; i.e., "[t]he punishment should fit the crime . . . courts must **consider** the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Cire*, 134 S.W.3d at 839 (citing *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)) (emphasis in original).

Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Id.* (citing *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 918). However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it. *Id.* (citing *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 918).

Here, Weinberger suggests the sanctions were not "just" because there was no direct relationship between his offensive conduct and the sanctions and the trial court did not first impose a lesser sanction. We disagree.

### 1. Direct Relationship Between Offensive Conduct and Sanctions

Weinberger acknowledges he did not initially comply with the trial court's discovery orders. However, he suggests that there was no direct relationship between his failure to comply and the sanctions because he did not refuse to produce material evidence and Longer was not prejudiced by his actions. Weinberger apparently does not dispute that, in most of the discovery requests at issue, Longer sought information material to Weinberger's claim against Longer and/or Longer's counterclaim.[17] Rather, Weinberger suggests he did not refuse to produce material evidence because he belated-

---

17. To summarize, the requests at issue mostly sought information and/or documents concerning the following: the work and materials each party agreed to provide and did provide; labor and materials provided by Weinberger for which he was allegedly not reimbursed; individuals and companies Weinberger retained to provide services; Weinberger's payments for labor and materials; Longer's payments; any alleged modifi-

cation of the contract; the factual basis for Weinberger's claim that Longer breached the contract, Weinberger did not breach the contract, and Longer did not suffer any damages; permits and certificates relating to the project; correspondence concerning the project; materials and labor Weinberger used for other projects and payments for this labor and materials; and workers used for other projects.

ly complied with the trial court's discovery orders after sanctions were entered. Therefore, he apparently challenges the initial sanctions order and the subsequent denial of his motion to reinstate, wherein the trial court effectively reaffirmed its previous order.

However, the record does not confirm Weinberger's contention that he belatedly complied with the discovery orders. To support his contention, Weinberger refers this court to his motion to reinstate and a record of the hearing on that motion. In the motion, he made an unsupported assertion that he "has since provided the requested discovery and it has proven to be immaterial to [Longer]." At the hearing, the parties introduced discovery responses that Weinberger filed within several days before the hearing. These responses indicate he did not sufficiently answer or produce documents as previously ordered by the trial court.

For instance, in his supplemental answers to some interrogatories seeking material information, he merely referred to other answers and/or documents although the trial court had ordered him to provide detailed answers and not just refer to other answers and/or documents.[18] In addition, Weinberger did not demonstrate at the hearing that he had filed supplemental responses to the first request for production although the trial court had ordered him to do so. Weinberger did file belated responses to the second and third requests for production. He attached some documents, including checks, his accounting of purported costs for the project, and tax

returns, and stated that other documents were available for inspection. Longer acknowledges that Weinberger made four boxes of documents available for inspection. However, Longer asserts that Weinberger's belated responses were not remotely in compliance with the trial court's order.

We recognize it may have been onerous for Weinberger to introduce four boxes of documents at the hearing. Regardless, without his introducing an affidavit, summary, or some type of evidence identifying the documents he produced, we cannot determine whether he complied with the trial court's previous order. Therefore, as far as this record shows, the trial court did not abuse its discretion by determining that Weinberger failed to produce evidence material to his claim and Longer's counterclaim when it denied the motion to reinstate.

Finally, Weinberger suggests that any lack of compliance with the trial court's discovery orders caused Longer no prejudice because he was prepared for trial. To the contrary, most of the Longer's evidence at trial consisted of his own witnesses and evidence, except for Weinberger's accounting and associated checks. Weinberger did not produce some of the detailed information requested by Longer regarding the work performed on his home and the charges to his account. As we have discussed, Longer had some difficulty proving precise damages due to Weinberger's failure to produce material information. Moreover, Longer's ability to

---

**18.** For example, Weinberger merely referred to other answers and/or documents in his original and supplemental answers to interrogatory numbers 3, 4, 6 and 8, which, in summary, asked him to do the following: identify all individuals and/or companies Weinberger retained to work on and/or provide services for the project; detail the respective work each individual and/or company was to provide; detail all materials Weinberger and Longer each acquired and provided for the project; detail the labor and/or materials for which Weinberger had expended funds and had not been reimbursed by Longer; and identify the specific work Weinberger and Longer each performed and/or contracted to have performed.

prove his own counterclaim despite Weinberger's failure to produce material information, does not negate any prejudice Longer would have incurred if he had been forced to defend against Weinberger's claim or address Weinberger's defenses to his counterclaim in the absence of complete and meaningful discovery.

### 2. Imposition of Lesser Sanction

Weinberger also contends the trial court did not first assess a lesser sanction to encourage compliance. To the contrary, before entering the sanctions at issue, the trial court twice ordered Weinberger to supplement and/or respond to discovery requests. In the second order, the trial court awarded attorney's fees to Longer and explicitly warned Weinberger that failure to comply with its previous discovery order by a date certain would result in the very sanctions eventually imposed. Despite this warning, Weinberger ignored the trial court's orders. Thus, the trial court actually first entered less stringent standards by awarding attorney's fees, but the lesser sanctions still failed to promote compliance.

In sum, because Weinberger refused to produce evidence material to his claim and Longer's counterclaim, despite the imposition of lesser sanctions, the trial court was entitled to presume that Weinberger's claim and his defenses to Longer's counterclaim lacked merit. We conclude the sanctions were "just," and the trial court did not abuse its discretion. *See Davenport v. Scheble*, 201 S.W.3d 188, 193–94 (Tex.App.-Dallas 2006, no pet. h.) (finding no abuse of discretion in trial court's entry of default judgment for plaintiff based on defendant's failure to fully respond to discovery requests, considering the trial court previously imposed lesser sanctions by granting plaintiff's motion to compel and requiring defendant to pay plaintiff's attorney's fees); *Hernandez v. Mid–Loop, Inc.*, 170 S.W.3d 138, 144 (Tex.App.-San Antonio

2005, no pet.) (finding no abuse of discretion in trial court's dismissing plaintiff's suit based on his failure to cooperate in his deposition and produce crucial information even after entry of lesser sanctions). We overrule Weinberger's fifth issue.

Accordingly, the judgment of the trial court is affirmed.