# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 27, 2010

Lyle W. Cayce
Clerk

No. 09-20268

SHANDONG YINGUANG CHEMICAL INDUSTRIES JOINT STOCK
COMPANY, LTD.

Plaintiff-Appellant

v.

MICHAEL POTTER

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and SMITH and ELROD, Circuit Judges.

PER CURIAM:

Appellant Shandong Yinguang Chemical Industries Joint Stock Co., Ltd.,
("Yinguang") sold explosive chemicals to Beston Chemical Corporation
("Beston"), a company wholly-owned by Appellee Michael Potter.  Beston failed
to make payments on two contracts and subsequently declared bankruptcy.  In
an effort to recover its losses, Yinguang sued Potter personally for common law
fraud and fraudulent inducement, and sought to impose personal liability by
piercing Beston's corporate veil.  The district court dismissed the case, finding
that Yinguang failed to meet the pleading requirements of Fed. R. Civ. P. 9(b) on
the fraud claims.  The district court also held that Yinguang did not have
standing to pursue the veil-piercing claim.  For the reasons that follow, we

conclude that Yinguang did not adequately plead fraud and affirm the district court's dismissal pursuant to Rule 12(b)(6).

## I. Background

Beston and Yinguang entered into eight contracts for delivery of chemicals. According to the well-pled allegations, Beston paid for the first six contracts, but in an untimely manner. This appeal stems from the last two contracts, Contracts No. 7 and No. 8. The parties entered into Contract No. 7 on February 25, 2004 for $1,369,216.80 and Contract No. 8 on June 1, 2004 for $1,328,644.80. During Beston's and Yinguang's business relationship, Potter often spoke with Yinguang's president, Sun Bowen.

Yinguang asserts that Potter made two types of misrepresentations during negotiations for these two contracts. First, on July 20, 2003, Potter represented that Beston was in "sound financial condition" and that Beston would pay for current and future shipments. Second, Potter represented repeatedly that Beston would make regular payments on its purchases. On February 2, 2004, when Bowen asked for a letter of credit to secure future payments, Potter replied that a letter of credit was unnecessary because Beston would make regular, timely payments. On April 26, 2004, Potter emailed Bowen describing Beston's financial difficulties, but he assured Bowen that Beston had remedied the problems and that "Yinguang will see continual, constant payments from BCC [Beston]." On April 30, 2004, Potter emailed Bowen again, promising that Beston would make payments on a frequent basis. After Beston failed to make payments on Contract No. 7, Yinguang refused to deliver any chemicals under Contract No. 8. On August 21, 2004, Potter again promised that Beston would pay Yinguang, and Yinguang proceeded to deliver the chemicals.[1]

---

[1] Beston notes that some delay was caused by a State Department sanction, issued in September 2004, against Yinguang's shipping agent. The sanction prohibited U.S. companies from doing business with the shipping agent and authorized payments only with permission from the Treasury Department.

2

Despite Potter's assurances, he omitted to tell Yinguang that Beston had been unprofitable in 2003. In the end, Beston made no regular payments on either contract. Yinguang sued Beston in Texas in state court in August, 2005. Beston and Yinguang entered into a settlement agreement and Beston made one payment of $499,216.80 on March 1, 2006. Six weeks later, Beston filed for Chapter 11 bankruptcy. Yinguang was left with a $2,198,644.80 unsecured claim.

Yinguang next sued Potter personally in federal district court. Yinguang alleges that Potter committed fraud and fraudulent inducement by lying to Sun Bowen to entice Yinguang to enter into Contracts No. 7 and No. 8. Alleging that Potter used Beston to perpetrate a fraud by funneling money out of Beston into other Potter-owned corporate entities, it also seeks to impose Beston's contract liability on Potter by piercing the corporate veil. Potter moved to dismiss under Fed. R. Civ. P. 12(b)(6). The district court granted the motion because Yinguang did not meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) on the fraud claims. The district court also held that Yinguang lacked standing to pursue the veil-piercing claim that was property of the Beston bankruptcy estate. Yinguang now appeals.

## II. Standard of Review

We review *de novo* a district court's dismissal for failure to state a claim under Rule 12(b)(6). *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff. *In re Katrina Canal Beaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). Further, with respect to the fraud and fraudulent inducement claims, Fed. R. Civ. P. 9(b) requires that Appellant "state with

particularity the circumstances constituting the fraud." FED. R. CIV. P. 9(b).
"Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid
out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th
Cir. 2003).

### III.  Discussion

### A.  Fraud

Yinguang alleges that Potter committed fraud both by affirmative
misrepresentation and by omission.  Specifically, Yinguang asserts that Potter's
statement that Beston was in "sound financial condition" was a
misrepresentation because Beston was unprofitable in 2003 and failed to obtain
a line of credit.  The elements of fraud in Texas are (1) the defendant made a
representation to the plaintiff; (2) the representation was material; (3) the
representation was false; (4) when the defendant made the representation the
defendant knew it was false or made the representation recklessly and without
knowledge of its truth; (5) the defendant made the representation with the
intent that the plaintiff act on it; (6) the plaintiff relied on the representation;
and (7) the representation caused the plaintiff injury.  *Ernst & Young, L.L.P. v.
Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

Yinguang's allegations fail to meet the pleading requirements of
Rule 9(b) as to several of the fraud elements.  First, Yinguang fails sufficiently
to allege that the "sound financial condition" statement was material.  A false
representation is material if a reasonable person would attach importance to and
be induced to act on the information.  *Citizens Nat'l Bank v. Allen Rae Invs.*,
142 S.W.3d 459, 478-79 (Tex. App.—Fort Worth 2004, no pet.).  This statement
is inherently vague and ambiguous.  Yinguang did not plead that Potter
presented any detailed, corroborating information, facts or figures to support the
statement that might entice a reasonable person to attach importance to the
statement.  *See id.*  Further, the statement is significantly attenuated from the
execution of Contract Nos. 7 and 8, which occurred, respectively, seven and ten

4

months later.  Potter also explains, without contradiction, that the statement was made during a meeting to assure Yinguang that a late payment on Contract No. 6 would be forthcoming.  Further undermining an inference of materiality in the "sound financial condition statement" is the reality that in the parties' course of dealing on prior contracts, Beston's payments had repeatedly been late although it "generally" met its obligations to Yinguang.  Under all of these circumstances, Yinguang's bare assertion of materiality rings hollow.

Second, Yinguang fails sufficiently to allege that the statement was false when made.  That Beston was unprofitable for the year 2003 and unable to obtain a line of credit sometime in 2004 do not support a conclusion Beston was not in "sound financial condition" in July 2003.  Many companies have unprofitable years but remain fiscally sound.  As Yinguang's pleadings admit, Beston was able to make all of its payments due on prior contracts in 2003.  Similarly, Beston's failure to obtain a line of credit does not necessarily imply that Beston was financially unsound.

Insofar as Yinguang relies on the series of promises to pay during early 2004, all but one of these post-date Contract No. 7 and cannot have influenced the decision to enter into that contract.  The statements concerning Beston's present and future willingness to pay are alleged to be fraudulent under two theories.  Yinguang says they were false when made because Beston had no ability to pay for the chemicals.  Alternatively, they were false because Betson never had an intent to perform the contract.  The "false when made" theory suffers from a lack of supporting details from which an inference of falsity could derive.  As previously noted, Yinguang offers no contemporary financial data undercutting Potter's assertion about the company's willingness to pay.  In fact, those assertions are consistent with Beston's history of paying Yinguang fully but untimely.  The April 26 statement, moreover, was accompanied by a frank admission of some financial difficulties, an admission at odds with falsity.

Yinguang's alternative theory is that Potter fraudulently induced Yinguang to enter into Contracts No. 7 and No. 8 by repeatedly promising to make payments with no intention of performing. "A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). "While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made." *Id.* However, "failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made." *Id.* at 435. "'Slight circumstantial evidence' of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent." *Id.* The court should consider all the circumstantial evidence as a whole to determine whether the evidence "transcend[s] mere suspicion." *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex.App.—Houston [14th Dist.] 2003, pet. denied).

Yinguang alleges, albeit without specifics, that Potter "funneled" money from Beston into his other companies. It contends that this allegation constitutes "slight circumstantial evidence of fraud" and, coupled with Beston's failure to perform, is sufficient to allege fraudulent inducement.

Certainly, "funneling" money from one entity to another could be "slight circumstantial evidence of fraud," but Yinguang's pleadings do not rise above the level of a conclusory description. Pleading standards demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. at 1949. The claim must be plausible on its face:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

6

> defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (internal citations and quotations omitted).    Further, Rule 9(b) imposes an additional burden on the plaintiff to detail facts and lay out the "the who, what, when, where, and how of a fraud." *Benchmark*, 343 F.3d at 724.

That Potter transferred money away from Beston is not, standing alone, sufficient under Rule 9(b) and *Iqbal*.    Moving money from one company to another may be consistent with fraud, but it does not create a reasonable inference that Potter is liable for fraud.    Beston could have had legitimate or illegitimate reasons for transferring money.    Yinguang has alleged no details that would corroborate a fraudulent scheme, such as when or why Potter moved the money, how much money was transferred, or whether this action was inconsistent with the company's past practices.[2]    In addition, Yinguang itself pleads evidence that counters a fraudulent intent not to perform.    A significant amount of time passed between Potter's first allegedly false representation to Yinguang in July 2003 and the company's ultimate failure to pay when it sought bankruptcy in March 2006.    *Compare United States v. Shah*, 44 F.3d 285, 293 n.14 (5th Cir. 1995)(short interval between alleged promise and failure to perform may be probative of fraud).    Beston's initial missed payments on Contracts No. 7 and 8 were predictable, given its history of untimely payments on the first six contracts.    The U.S. State Department sanctions created a change in circumstance that prevented Beston from selling or delivering the chemicals in the latter part of 2004.    Beston made a significant payment of $499,216.80 in March 2006.    *See IKON*, 125 S.W.3d at 124 ("Partial performance can negate an intent not to keep a promise at the time it was made.").    All of these events point away from an inference that Potter never intended to pay.

---

[2] *Compare Weinberger v. Longer*, 222 S.W.3d 557, 563 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (contractor used plaintiff's money to pay for materials on other projects).

Although this may be a close case due to *Spoljaric*'s "slight circumstantial evidence" language, given the heightened pleading requirements of Rule 9(b), and the equipoise, on all the facts pleaded read as a whole, between an inference of fraud and one of Beston's business as usual, we conclude that Yinguang's allegations do not plausibly plead fraudulent intent not to pay at the time of Potter's representations.

Yinguang also asserts that Potter had a duty to disclose Beston's financial condition but did not do so, thereby committing fraud by omission. A defendant's failure to disclose information will support a claim for fraud only where the defendant has a duty to disclose. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). While there is no general duty to disclose, a duty to speak arises between non-fiduciaries when "one party learns later that his previous affirmative statement was false or misleading." *Union Pac. Res. Group v. Rhone-Poulenc*, 247 F.3d 574, 586 (5th Cir. 2005); *Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.*, 715 S.W.2d 658, 669 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (a duty to disclose arises when "a party later learns that previous affirmative representations are in fact false"). We are persuaded that the "sound financial condition" statement was not pled to be false when made in July 2003. Further, Potter's statement indicating no letter of credit was necessary in February 2004 is not sufficiently pled to have been false when made. Potter did, however, admit the company was suffering financial difficulties in April 2004, when he coupled his admission with a further promise to pay. For this statement to have involved a fraudulent omission, Yinguang would have to assert facts showing its obvious insufficiency and patent insincerity (amounting to fraudulent intent). Viewed in the totality of the parties' dealings—frequent late payments, full eventual payment on the first six contracts, no relevance to the execution (in February) of Contract No. 7—and the absence of corroborating financial facts aside from the eventual default, we are reluctant to transform this admission into a fraudulent omission claim.

## B.  Veil-Piercing Claim

Last, Yinguang seeks to impose personal liability on Potter for Contracts No. 7 and 8 by piercing Boston's corporate veil.  Piercing the corporate veil is not a separate cause of action, but a method to impose personal liability on shareholders and corporate officers who would otherwise be shielded from liability for corporate debts.  *Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*, 456 S.W.2d. 476, 480 (Tex. App.—Fort Worth 1987, no writ).  Yinguang alleges that Potter used Beston as a sham to perpetrate a fraud, which entitles it to pierce the corporate veil and impose personal liability.  *SSP Partners v.  Gladstrong Invs.*, 275 S.W.3d 444, 455 (Tex.  2008).  This claim requires proof that Potter committed an actual fraud against it.  *See* TEX. BUS. ORGS. CODE ANN. § 21.223(b);[3] *Kingston v. Helm*, 82 S.W.3d 775, 765 (Tex. App.—Corpus Christi 2002, pet.  denied).  As discussed above, Yinguang fails to allege an actual fraud, and therefore fails to sustain a basis for holding Potter personally liable for Contracts No. 7 and No. 8.  Because the veil piercing claim may be dismissed for this reason, we do not address whether Yinguang or the Beston estate owned the right to pierce the corporate veil.[4]

---

[3] Yinguang cites TEX BUS. CORP. ACT ANN. art.  2.21.  "Sections A and B of this article, after a legislative reorganization of the statutes governing business entities effective January 1, 2006, were recodified in substantially similar form in TEX. BUS. ORGS. CODE § 2.223, and §§ 21.224-.225, respectively."  *SSP Partners*, 275 S.W.3d at 455 (citing  Act of May 29, 2003, 78th Leg., R.S., ch. 182, §§ 1, 2, 2003 Tex. Gen. Laws 267, 427, 595).

[4] In this circuit, we determine whether an asserted cause of action arising from a corporate bankruptcy properly belongs to an individual creditor or, because it belongs to the debtor's estate or seeks to recover property of the estate, may only be pursued by the trustee on behalf of all creditors.  *In re Schimmelpenninck*, 183 F.3d 347, 355 (5th Cir. 1999).  *Schimmelpenninck* held that alter ego "and other" piercing the corporate veil theories must be pursued only on behalf of the debtor.  *Id.* (citing *In re S.I. Acquisition*, 817 F.2d 1142, 1153 (5th Cir. 1987).  Texas, however, has codified species of veil-piercing that authorizes a contract creditor to pierce the obligor's corporate veil if the corporate form was used as a sham to perpetrate a fraud and actual fraud was committed <u>against</u> that <u>creditor</u>.  TEX. BUS. ORGS. CODE ANN. § 21.223(b) (2008) (emphasis added).  Other decisions have held a fraud claim, if personal to the creditor, not to be property of the debtor's estate even though the debtor might also possess and litigate its own claims against the estate.  *See In re Seven Seas, Inc.*, 522 F.3d 575, 585 (5th Cir. 2008); *In re Educators Group Health Trust*, 25 F.3d 1281, 1285-86 (5th Cir.

9

## Conclusion

For the foregoing reasons, we affirm the district court's dismissal pursuant

to Rule 12(b)(6).                                                **AFFIRMED.**

---

1994). Neither *Seven Seas* nor *Educators*, however, disturbed the additional requirement of *S.I. Acquisitions*, 817 F.2d at 1150, that an individual claim seeking recovery or control of the debtor's property is subject to the Code's automatic stay. Here, it is argued, even if the particular veil-piercing claim asserts fraud specifically committed against Yinguang, nevertheless the recovery of assets wrongfully taken or "funneled" from Beston should inure to the benefit of all of Beston's creditors. Because we need not decide whether Yinguang's claim seeks to recover property of the estate, we do not address whether Yinguang has the right to pursue the claim individually. These facts lie between *Schimmelpenninck* and *Seven Seas* and their antecedents, and we leave definitive resolution of the issue for another day.