**Affirmed and Memorandum Opinion filed April 24, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-10-01037-CV

**EMS USA, INC., Appellant**

**V.**

**EPOXY DESIGN SYSTEMS, INC., Appellee**

**On Appeal from the 311th District Court
Harris County, Texas
Trial Court Cause No. 2009-05057**

## M E M O R A N D U M   O P I N I O N

A subcontractor sued a general contractor seeking to recover unpaid sums allegedly owing under the parties' contract. The jury found that the parties agreed to be bound by certain contract provisions. The trial court concluded that these provisions were unambiguous and rendered judgment based upon the jury's verdict and the trial court's interpretation of these provisions. On appeal, the subcontractor asserts that the trial court erred in its interpretation of these provisions and in its failure to render judgment in favor of the subcontractor based upon the subcontractor's interpretation of these provisions. Concluding that the subcontractor failed to preserve error as to one issue and failed to adequately brief the other, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff EMS USA, Inc. sued appellee/defendant Epoxy Design Systems, Inc. seeking to recover more than $300,000 that Epoxy failed to pay EMS allegedly in breach of Epoxy's contract with EMS. In the alternative, EMS sought to recover under a quantum-meruit theory. Epoxy filed a counterclaim seeking declaratory relief.

Under the contract in question, EMS, as subcontractor, performed services that Epoxy was obligated to perform under a contract with Equistar Chemicals, LP, the owner of the plant where the services were performed. EMS performed the services and invoiced Epoxy, and Epoxy invoiced Equistar under Epoxy's contract with Equistar. Before Equistar made all payments required under its contract with Epoxy, Equistar filed for bankruptcy protection. Epoxy took the position that it had no obligation to pay EMS for EMS's services until Epoxy received payment from Equistar. EMS took the position that, under its contract with EMS, Epoxy was required to pay EMS for its services regardless of whether Equistar paid Epoxy for the services.

The case was tried to a jury. EMS presented evidence that (1) its contract with Epoxy was governed by terms and conditions contained in an August 5, 2008 letter (the "Terms and Conditions") and (2) EMS and Epoxy agreed that Epoxy would pay EMS for its services regardless of whether Equistar paid Epoxy for the services. Epoxy presented evidence that (1) the parties did not agree to be bound by the Terms and Conditions; (2) the parties agreed to be bound by the provisions of a Subcontract Agreement sent by EMS to Epoxy on August 6, 2008 (the "Subcontract"); (3) under the Subcontract, Epoxy had no obligation to pay EMS for EMS's services until Epoxy received payment from Equistar; and (4) as of the time of trial, Equistar had not paid Epoxy for the services that formed the basis of EMS's suit against Epoxy.

During the charge conference, the trial court stated that if the jury were to find that the parties agreed Epoxy would pay EMS for its services regardless of whether Equistar paid Epoxy for the services performed by EMS, then there would be no need to submit a

2

question on breach of contract or damages because breach and damages in the amount of $200,621.14 had been proved as a matter of law. Thus, the trial court instructed that if the jury found such an agreement, then the jury was to answer a question as to whether EMS could recover an additional $109,663.35 under a quantum-meruit theory. The trial court further instructed the jury that, if the jury did not find such an agreement, the jury was not to answer this question.

The jury unanimously found that (1) EMS failed to prove by a preponderance of the evidence that the parties agreed Epoxy would pay EMS for its services regardless of whether Equistar paid Epoxy for the services performed by EMS and (2) the parties agreed to be bound by the provisions of the Subcontract. Under the trial court's charge, these were the only two findings that the jury was required to make, and the jury obeyed the trial court's instructions not to answer any of the quantum-meruit questions.

Epoxy submitted to the trial court a proposed judgment on the jury's verdict. In response, EMS filed a motion requesting that the trial court not grant the relief provided in the judgment proposed by Epoxy. The trial court rendered judgment in favor of Epoxy, concluding that, under the unambiguous language of the Subcontract, Epoxy is only obligated to pay EMS when Epoxy receives payment from Equistar and that Equistar had not paid Epoxy. The trial court ordered that EMS take nothing by way of its claims. The trial court declared that, under the unambiguous language of the Subcontract, (1) Epoxy is not required to pay EMS until Epoxy receives payment from Equistar; and (2) EMS is only entitled to payment for the amount Epoxy actually receives from Equistar up to $310,284.49, the total amount of the invoices for the work EMS provided to Equistar. The trial court did not award attorney's fees to either party.

After the trial court rendered judgment, EMS did not ask the trial court to modify, correct, or reform its judgment. EMS timely filed a motion for new trial, which was overruled by operation of law.

3

## II. ISSUES PRESENTED

EMS presents two appellate issues. First, EMS asserts that the trial court erred as a matter of law in its interpretation of the unambiguous Subcontract. In its second issue, EMS asserts that, as a result of its erroneous interpretation of the Subcontract, the trial court erred in granting a take-nothing judgment in favor of Epoxy and that instead the trial court should have granted a judgment in favor of EMS in a sum equal to $200,621.14, plus attorney's fees, interest, and court costs.[1]

## III. ANALYSIS

### A. Did the subcontractor preserve error as to its argument that the trial court erred by failing to render judgment in the subcontractor's favor?

EMS argues that, under the unambiguous language of the Subcontract, Epoxy is obligated to pay EMS within a reasonable time after EMS performed its services, and that Epoxy's obligation to pay is not conditioned upon its receipt of any payment from Equistar. EMS cites cases supporting the proposition that, to shift the risk of the owner's insolvency from the general contractor to the subcontractor, the subcontract must contain an express condition clearly showing that the parties intended to shift this risk to the subcontractor. *See Sheldon L. Pollack Corp. v. Falcon Indus., Inc.*, 794 S.W.2d 380, 384 (Tex. App.—Corpus Christi 1990, writ denied). EMS argues that the Subcontract does not contain such language and therefore the parties did not agree to shift the risk of Equistar's insolvency from Epoxy to EMS. On appeal, EMS effectively argues that, under the unambiguous language of the Subcontract, the trial evidence proves as a matter of law that Epoxy breached its contract with EMS and that $200,621.14 in actual damages resulted from this breach. EMS argues that the trial court erred by failing to render judgment in EMS's favor for the $200,621.14 in contract damages, the amounts of reasonable and necessary attorney's fees to which the parties stipulated during trial,

---

[1] In the alternative, EMS requests that this court reverse and remand for a new trial "for the reasons stated in this appeal."

interest, and court costs.[2]  To have preserved error, EMS must have raised this appellate complaint in the trial court.  *See Tucker v. Thomas*, No. 14-09-01081-CV, —S.W.3d— ,—, 2011 WL 6644710, at *14–15 (Tex. App.—Houston [14th Dist.] Dec. 20, 2011, pet. filed) (en banc).

EMS did not move the trial court for a directed verdict.  At the charge conference, EMS did not assert the complaint it raises in this appeal—that judgment should be rendered as a matter of law for breach of contract based upon the Subcontract.  In fact, EMS objected to the trial court's submission of the question asking if the parties agreed to be bound by the provisions of the Subcontract, arguing that there was no evidence that EMS agreed to be bound by the Subcontract.[3]  Following the jury's verdict, EMS did not submit a proposed judgment or request the trial court to render judgment in its favor on the jury's verdict.  EMS did not move for judgment notwithstanding the jury's verdict, nor did EMS ask the trial court to disregard any jury finding.  EMS did file a motion in opposition to Epoxy's proposed judgment, but EMS did not assert its appellate complaint in that motion.  Rather, EMS argued that (1) during the charge conference the trial court clearly stated that the trial court would render judgment in EMS's favor if the jury found (as it did) that the parties agreed to be bound by the provisions of the Subcontract;[4] and (2) Epoxy is not entitled to declaratory relief or attorney's fees under the Texas Declaratory Judgments Act because Epoxy's counterclaim for declaratory relief does not present a justiciable controversy.

After the trial court rendered judgment, EMS did not ask the trial court to modify, correct, or reform its judgment.  EMS timely filed a motion for new trial, in which EMS argued that the trial court should interpret the Subcontract as requiring Epoxy to pay

---

[2] The parties stipulated that certain amounts would be reasonable and necessary attorney's fees for EMS but did not stipulate that EMS is entitled to recover any attorney's fees.

[3] We do not suggest that this objection precluded EMS from later raising the appellate complaint through a post-verdict or post-judgment motion.

[4] EMS does not assert this argument on appeal.  Even if it did, the record does not reflect that the trial court made such a statement during the charge conference.

EMS for EMS's work regardless of whether Equistar ever pays Epoxy. Based upon this interpretation, EMS asked the trial court for a new trial in which all of EMS's claims against Epoxy would be re-litigated. EMS did not assert that the evidence proved as a matter of law Epoxy's breach of contract and damages to EMS resulting from the breach. Nor did EMS ask the trial court to render judgment in EMS's favor. EMS's motion did not contain a general prayer, and EMS did not request any relief other than a new trial.

Having reviewed the entire appellate record, we conclude that EMS did not raise in the trial court its complaint that the trial court erred by failing to render judgment in EMS's favor for $200,621.14 in contract damages, plus attorney's fees, interest, and court costs. *See* Tex. R. App. P. 33.1(a); *Tucker*, 2011 WL 6644710, at *14–15; *Weinberger v. Longer*, 222 S.W.3d 557, 566–67 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). EMS has failed to preserve error regarding this complaint and therefore we overrule EMS's second issue.

**B.     Has the subcontractor argued that the trial court erred by overruling the subcontractor's motion for new trial?**

As to EMS's first issue, the only place in the record in which EMS arguably preserved error as to this issue is in EMS's motion for new trial.[5] EMS does not assert on appeal that the trial court erred in denying its motion for new trial. In its opening appellate brief, EMS requests that, in the alternative, this court order "a new trial of this matter for the reasons stated in this appeal." We presume, without deciding, that the issue of whether the trial court erred in denying the motion for new trial is a subsidiary question fairly included in EMS's issues presented and that EMS has assigned error in this regard. *See* Tex. R. App. P. 38.1(f). But, even under this presumption, EMS has not provided any argument, analysis, or citations to show that the trial court erred in denying

---

[5] We presume that, in the motion for new trial, EMS voiced its appellate complaint in the first issue that the trial court erred in its interpretation of the Subcontract. Nonetheless, in the motion for new trial, EMS did not assert its appellate argument that it is entitled to judgment as a matter of law. *See Gammill v. Fettner*, 297 S.W.3d 792, 801–02 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that party did not preserve error in his motion for new trial as to an issue that he raised on appeal).

its motion for new trial.  Even construing EMS's appellate brief liberally, we cannot conclude that EMS has briefed this issue adequately.  *See* Tex. R. App. P. 38.1(i); *Tucker*, 2011 WL 6644710, at \*15; *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.— Houston [14th Dist.] 2005, no pet.).  Based upon this inadequate briefing, EMS has waived any complaint that the trial court erred by denying EMS's motion for new trial.[6]  *See Tucker*, 2011 WL 6644710, at \*15; *San Saba Energy, L.P.*, 171 S.W.3d at 337.  Accordingly we overrule EMS's first issue.

## IV. CONCLUSION

EMS failed to preserve error in the trial court regarding its second issue.  The only way in which EMS arguably preserved error as to its first issue was by its motion for new trial.  But, EMS has not adequately briefed the issue of whether the trial court erred in denying EMS's motion for new trial.  Accordingly, EMS cannot prevail on either appellate issue.

The judgment of the trial court is affirmed.


/s/     Kem Thompson Frost
        Justice


Panel consists of Justices Frost, Seymore, and Jamison.

---

[6] In any event, presuming for the sake of argument that the contract interpretation asserted in EMS's motion for new trial is correct, this argument would not entitle EMS to a re-trial of either its breach-of-contract claim or its quantum-meruit claim.  *See Environmental Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 631–32 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  Therefore, even absent briefing waiver, we would conclude that the trial court did not abuse its discretion by denying EMS's motion for new trial.