**Roy ECKHARDT, et al., Plaintiffs,**

v.

**QUALITEST PHARMACEUTICALS INC., et al., Defendants.**

**Civil Action No. M–11–235.**

United States District Court,
S.D. Texas,
McAllen Division.

April 30, 2012.

Daniel McGlynn, Terrence Joseph Donahue, McGlynn Glisson Mouton, Baton Rouge, LA, William B. Curtis, Curtis Law Group, Dallas, TX, John Timblin Flood, Flood & Flood, Corpus Christi, TX, for Plaintiffs.

Marjory Colvin Batsell, Attorney at Law, Brownsville, TX, Michael R. Klatt, Attorney at Law, Austin, TX, Andrew J. Calica, Henninger S. Bullock, Mayer Brown LLP, Mark S. Cheffo, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, Charles Stephen Kelley, Mayer Brown LLP, Houston, TX, for Defendants.

## *ORDER*

MICAELA ALVAREZ, District Judge.

Pending before the Court is the self-styled "Motion to Dismiss by Defendants Qualitest Pharmaceuticals, Inc. and Vintage Pharmaceuticals, LLC" and supporting memorandum.[1] Defendants Qualitest Pharmaceuticals, Inc. and Vintage Pharmaceuticals, LLC, the generic manufacturer defendants ("Generics"), argue that in light of *PLIVA, Inc. v. Mensing*,[2] Plaintiffs' second amended complaint should be dismissed under Federal Rules of Civil Procedure 8, 9 and 12.[3] After considering the motion, memorandum, response and relevant authorities, the Court finds that the motion should be **GRANTED**.

## I. Background [4]

Plaintiffs filed their first complaint on April 13, 2011.[5] On June 29, 2011, they filed an amended complaint.[6] Plaintiffs filed their *second amended complaint* on August 26, 2011.[7] The second amended complaint alleges Roy Eckhardt ("Eckhardt") developed a neurological disorder known as tardive dyskinesia in early 2008.[8] Plaintiffs allege that Eckhardt's condition was caused by Reglan/metoclopramide, which his doctor began prescribing in 2007

1. Dkt. No. 47; Dkt. No. 47, Attach. 1.

2. —— U.S. ——, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011).

3. Dkt. No. 47, Attach. 1.

4. The Court notes at the outset that the Supreme Court in *Mensing* expressly limited its analysis of federal law to the law as it existed prior to the 2007 amendments. *Mensing*, 131 S.Ct. at 2574 n. 1. Here, Generics assert that the 2007 amendments do not alter the outcome in this case and Plaintiffs have not directed the Court to anything that indicates otherwise.

5. Dkt. No. 1.

6. Dkt. No. 10.

7. Dkt. No. 22.

8. Dkt. No. 22, at ¶ 3.48.

to treat Eckhardt's gastrointestinal problems.[9] Plaintiffs sued both brand-name and generic manufacturers of Reglan/metoclopramide.[10] The thirty-three page complaint advances several theories of recovery ranging from negligence to fraud.[11] Generics' motion to dismiss argues that all of Plaintiffs' claims against Generics should be dismissed for failure to state a claim upon which relief may be granted.

## II. Dismissal Standards

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."[12] "A pleading that states a claim for relief must contain: ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief...."[13] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[14] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] "[T]he tenet that a court must accept as true all of the allegations con-

tained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[16]

To the extent that Plaintiffs allege fraud or misrepresentation, those claims are subject to the heightened pleading standards of Rule 9(b).[17] Rule 9(b) "requires that [a plaintiff] 'state with particularity the circumstances constituting the fraud.' 'Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out.'"[18]

## III. Analysis

The Court will begin its analysis by reviewing a recent Supreme Court decision that dealt with preemption of certain claims against generic manufactures of metoclopramide, then the Court will explore the interaction of *Mensing* and Texas products liability law, and finally the Court will evaluate whether Plaintiffs have stated any claims that are not preempted.

## A. PLIVA, Inc. v. Mensing

As a threshold matter, the Court will address the elephant in the room, *PLIVA, Inc. v. Mensing*.[19] The Supreme Court handed down this opinion on June 23, 2011,[20] which was six days before Plaintiffs

9. *Id.* at ¶¶ 3.15, 3.48–3.50.

10. *Id.* at ¶¶ 1.06–1.07; 3.02–3.03, 3.10.

11. *Id.*

12. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir.2010) (citation omitted).

13. Fed.R.Civ.P. 8(a).

14. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

15. *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

16. *Id.* at 1949–1950 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

17. Fed.R.Civ.P. 9(b).

18. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir.2010) (quoting Fed.R.Civ.P. 9(b); *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.2003)).

19. —— U.S. ——, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011).

20. *Id.*

filed their first amended complaint and two months before Plaintiffs filed their second amended complaint.

*Mensing* is strikingly similar to the case now before the Court. *Mensing* was a consolidation of lawsuits in which Gladys Mensing and Julie Demahy sued generic manufacturers of metoclopramide.[21]

> Each alleged, as relevant here, that long-term metoclopramide use caused her tardive dyskinesia and that the Manufacturers were liable under state tort law (specifically, that of Minnesota and Louisiana) for failing to provide adequate warning labels. They claimed that 'despite mounting evidence that long term metoclopramide use carries a risk of tardive dyskinesia far greater than that indicated on the label,' none of the [generic manufacturers] had changed their labels to adequately warn of that danger.[22]

The defendant generic manufacturers responded by arguing "that federal law preempted the state tort claims."[23]

The Supreme Court began its preemption analysis by identifying and comparing the state tort duties with the applicable federal drug labeling requirements,[24] and highlighted various differences between the approval and labeling requirements of brand-name and generic drugs.[25] The opinion contrasted the complicated FDA approval process for new drugs with the approval process under the Hatch–Waxman Amendments for " 'generic drugs' [which] can gain FDA approval simply by showing equivalence to a reference listed drug that has already been approved by the FDA."[26] The Supreme Court defined a "generic drug" as a "drug designed to be a copy of a reference listed drug (typically a brand-name drug), and thus *identical in active ingredients, safety, and efficacy.*"[27] Similarly, the majority contrasted the labeling duties of brand-name and generic drug manufacturers in seeking drug approval. "A brand-name manufacturer seeking new drug approval is responsible for the accuracy and adequacy of its label. A manufacturer seeking generic drug approval, on the other hand, is responsible for ensuring that its warning label is the same as the brand name's."[28]

The Supreme Court then turned to the issue of whether generic manufacturers were permitted to change their labels "*after* initial FDA approval."[29] The majority analyzed this issue under the principles of conflict preemption stating, "[w]here state and federal law 'directly conflict,' state law must give way"[30] and "[w]e have held that state and federal law conflict where it is 'impossible for a private party to comply with both state and federal requirements.' "[31] It is important to note that *Mensing* turned on the issue of conflict preemption-not express preemption. When the Supreme Court conducted a conflict preemption analysis in *Mensing*, it determined:

> We find impossibility here. It was not lawful under federal law for the [generic manufacturers] to do what state

**21.** *Id.* at 2572–2573.

**22.** *Id.* at 2573.

**23.** *Id.*

**24.** *Id.* at 2574–2575.

**25.** *Id.*

**26.** *Id.* at 2574 (citation omitted).

**27.** *Id.* at 2574 n. 2 (citations omitted) (emphasis added).

**28.** *Id.* at 2574 (citations omitted).

**29.** *Id.*

**30.** *Id.* at 2577 (citation omitted).

**31.** *Id.* (citation omitted).

law required of them. And even if they had fulfilled their federal duty to ask for FDA assistance, they would not have satisfied the requirements of state law.

> If the [generic manufacturers] had independently changed their labels to satisfy their state-law duty, they would have violated federal law. Taking Mensing and Demahy's allegations as true, state law imposed on the [generic manufacturers] a duty to attach a safer label to their generic metoclopramide. Federal law, however, demanded that generic drug labels be the same at all times as the corresponding brand-name drug labels. Thus, it was impossible for the [generic manufacturers] to comply with both their state-law duty to change the label and their federal law duty to keep the label the same.[32]

Later in the opinion the Supreme Court further developed its analysis stating, "federal law would permit the [generic manufacturers] to comply with the state labeling requirements if, and only if, the FDA and the brand-name manufacturer changed the brand-name label to do so."[33] Mensing and Demahy argued that the generic manufacturers could not "bear their burden of proving impossibility because they did not even *try* to start the process that might ultimately have allowed them to use a safer label."[34] The majority rejected this argument because "[t]he question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it."[35]

In the wake of *Mensing*, it is clear that state laws requiring generic drugs to have different labels than the FDA-approved brand-name labels are preempted. In order to understand the full implications of *Mensing*, it is necessary to review the definition of labeling in the prescription drug context.

> Brochures, booklets, mailing pieces, detailing pieces, file cards, bulletins, calendars, price lists, catalogs, house organs, letters, motion picture films, film strips, lantern slides, sound recordings, exhibits, literature, and reprints and similar pieces of printed, audio, or visual matter descriptive of a drug and references published (for example, the "Physicians Desk Reference") for use by medical practitioners, pharmacists, or nurses, containing drug information supplied by the manufacturer, packer, or distributor of the drug and which are disseminated by or on behalf of its manufacturer, packer, or distributor are hereby determined to be labeling as defined in section 201(m) of the act.[36]

Thus, *Mensing* covers a wide variety of communications regarding prescription drugs.

## B. *Mensing* and Texas Products Liability Law Preclude Most Theories of Recovery

Turning to the case at bar, Plaintiffs' extensive complaint alleges several theories of recovery, but they all arise out of the alleged injury to Roy Eckhardt caused by his alleged use of metoclopramide. In

---

**32.** *Id.* at 2577–2578 (internal citation omitted).

**33.** *Id.* at 2578.

**34.** *Id.* at 2578–2579.

**35.** *Id.* at 2579 (citing *Wyeth v. Levine*, 555 U.S. 555, 573, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009)).

**36.** 21 C.F.R. § 202.1(*l*)(2); *see also, Del Valle v. PLIVA, Inc.*, Civ. No. B:11–113, 2011 WL 7168620, at *4 (S.D.Tex. Dec. 21, 2011) ("In essence, virtually all communication with medical professionals concerning a drug constitutes labeling.") (citing 21 C.F.R. § 202.1(*l*)(2)).

Plaintiffs' motion for leave to file a second amended complaint, they stated, "[t]his is a product liability case."[37] Upon review of the second amended complaint, the Court agrees that despite the multiple claims asserted by Plaintiffs, this is essentially a products liability case, with the claim arising from a failure to warn. More specifically, Plaintiffs claim that Generics failed to warn, in one form or another, that long-term use of metoclopramide caused tardive dyskinesia.

As this case is before the Court based on diversity, the Court applies Texas products liability law. In Texas,

'[p]roducts liability action' means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.[38]

■ Furthermore, Texas follows the § 402A Restatement (Second) of Torts approach to strict products liability.[39] Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.[40]

Thus, "a product may be unreasonably dangerous because of a defect in marketing, design, or manufacturing."[41]

■ As mentioned above, this is primarily a failure to warn case. In Texas there is a statutorily created presumption in certain products liability actions involving prescription drugs where the plaintiff alleges a failure to provide adequate warnings or information:

(a) In a products liability action alleging that an injury was caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product, there is a rebuttable presumption that the defendant or defendants, including a health care provider, manufacturer, distributor, and prescriber, are not liable with respect to the allegations involving failure to provide adequate warnings or information if:

(1) the warnings or information that accompanied the product in its distribution were those approved by the United States Food and Drug Administration for a product approved under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Section 301 et seq.), as amended, or Section 351, Public Health Service Act (42 U.S.C. Section 262), as amended;[42]

---

**37.** Dkt. No. 20.

**38.** Tex. Civ. Prac. & Rem.Code Ann. § 82.001(2) (Vernon Supp.2011–2012).

**39.** *FFE Transp. Servs., Inc. v. Fulgham,* 154 S.W.3d 84, 87 (Tex.2004).

**40.** Restatement (Second) of Torts § 402A (1965).

**41.** *Am. Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 426 (Tex.1997) (citations omitted).

**42.** Tex Civ. Prac. & Rem.Code Ann. § 82.007(a) (Vernon Supp.2011–2012).

Plaintiffs' second amended complaint apparently assumes that the warnings and information accompanying Eckhardt's metoclopramide were approved by the FDA.[43] Thus, Generics appear to be statutorily protected from liability. However, the statute provides five means by which the presumption may be rebutted.[44] Here, Plaintiffs specifically deny the applicability of the presumption by alleging that Generics withheld information from the FDA and misrepresented information to the FDA.[45] These allegations correspond to one of the statutorily enumerated means of rebutting the presumption. But recently, the Fifth Circuit determined in *Lofton v. McNeil Consumer and Specialty Pharmaceuticals* that fraud-on-the-FDA claims under Texas Civil Practice and Remedies Code 82.007(b)(1) are preempted "unless the FDA itself has found fraud."[46] The second amended complaint does not indicate that the FDA has itself found fraud. Therefore, in light of *Lofton*, the Court finds that Plaintiffs' claims that Generics provided the FDA with misinformation, however characterized, are preempted.

■ As noted, Plaintiffs have not disputed that Generics' warnings and information were approved by the FDA. Texas products liability law shields a manufacturer from liability for "an injury . . . caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product"[47] regardless of "whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or

combination of theories."[48] Furthermore, as stated above, *Mensing* makes clear that any state laws requiring Generics' labeling to deviate from the approved brand labeling are preempted. To the extent that Generics only provided labeling and information that was approved by the FDA, Plaintiffs cannot prevail on any failure to warn theory.

■ Additionally, Plaintiffs cannot prevail on a theory that Generics failed to monitor the safety of metoclopramide either through testing or post-market surveillance. Simply put, there is a causation problem. Even assuming that testing by Generics would have uncovered the dangers of long-term metoclopramide use earlier, that knowledge would only be helpful to the extent that it was communicated through labeling. But *Mensing* establishes that Generics were not in a position to unilaterally change the labeling associated with the metoclopramide that they were producing. Therefore, like Demahy and Mensing's claim that generic manufacturers have a duty to request a strengthened label from the FDA,[49] this failure to monitor claim is precluded by *Mensing*.

## C. Theories of Recovery That Potentially Remain

The Court now considers those claims that may survive the above analysis. To survive the motion to dismiss, a claim must be both legally possible and supported by facts alleged in the complaint. The Court begins by noting that the response to the motion to dismiss adds several assertions

---

43. Dkt. No. 22 at p. 32.

44. Tex. Civ. Prac. & Rem Code Ann. § 82.007(b) (Vernon Supp.2011–2012).

45. Dkt. No. 22 at p. 32.

46. 672 F.3d 372, 380 (5th Cir.2012).

47. Tex. Civ. Prac. & Rem.Code Ann. § 82.007(a) (Vernon Supp.2011–2012).

48. Tex. Civ. Prac. & Rem.Code Ann. § 82.001(2) (Vernon Supp.2011–2012).

49. *PLIVA, Inc. v. Mensing*, —— U.S. ——, 131 S.Ct. 2567, 2576–2577, 180 L.Ed.2d 580 (2011).

of fact that were not included in the second amended complaint. Although the Court interprets a new theory raised in a response to a motion to dismiss as a motion to amend,[50] the Court finds that such amendment should not be permitted here. Plaintiffs have already amended their complaint twice since the Supreme Court handed down *Mensing*.[51] Therefore, Plaintiffs have been afforded sufficient opportunities to make the necessary adjustments.

### 1. Manufacturing Defect

▆▆▆ Plaintiffs' complaint alludes to a manufacturing defect.[52] "A manufacturing defect exists 'when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous.'"[53] The Court finds that the complaint contains no more than conclusory allegations that there was a manufacturing defect. Accordingly, Plaintiffs' manufacturing defect claim is dismissed.

### 2. Failure–to–Provide–Any–Information

In Plaintiffs' response, they argue that even if state laws requiring Generics to have different warnings than the FDA approved brand-name labeling are preempted, Generics may still be held liable for failing to provide any information whatsoever. In their response, Plaintiffs go as far as stating that "Generic Defendants never provided Plaintiff or his physicians with *ANY* warning or other information with regard to metoclopramide."[54] Criti-

cally, Plaintiffs' second amended complaint directly contradicts the new assertion that Generics provided no information regarding metoclopramide. In the second amended complaint, Plaintiffs state:

> Qualitest and Vintage expressly warranted to physicians that Reglan/metoclopramide was safe for long term use.[55] Each of the generic drug company defendants adopted, in substance, as the text of the "package insert" for its generic metoclopramide product, the verbatim content of the package insert for Reglan, *as revised from time to time, modified only to reflect therapeutically non-relevant differences among the products,* such as color[,] shape, inactive ingredients, and source of manufacture.[56]

Because the live pleading directly contradicts the failure-to-provide-any-information theory raised in the response, the Court will not consider this theory.

### 3. Failure–to–Update–Labeling

In both the second amended complaint and the response to the motion to dismiss, Plaintiffs complain that Generics did not properly update the labeling. But it is critical to understand that, although they are couched in similar language, the claims in the complaint and the claims in the response are based on radically different allegations. In the complaint, the claims focus on alleged failures to update the labeling *to warn of the actual risks associated with metoclopramide.*[57] *Mensing*

---

**50.** *See Stover v. Hattiesburg Pub. Sch. Dist.,* 549 F.3d 985, 989 n. 2 (5th Cir.2008).

**51.** *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (listing "repeated failure to cure deficiencies by amendments previously allowed" among valid reasons for denying leave to amend).

**52.** Dkt. No. 22 at ¶ 4.03(a).

**53.** *BIC Pen Corp. v. Carter,* 346 S.W.3d 533, 540 (Tex.,2011) (internal quotation and citation omitted).

**54.** Dkt. No. 54 at p. 3.

**55.** Dkt. No. 22 at ¶ 3.04.

**56.** *Id.* at ¶ 3.18 (emphasis added).

**57.** *See, e.g., id.* at ¶¶ 3.73, 3.81, 3.94.

makes clear that these claims are preempted because generic manufacturers are not free to unilaterally change their labeling. For example, the Supreme Court stated, "we conclude that federal law did not permit the Manufacturers to issue additional warnings through Dear Doctor letters."[58] Therefore, the failure-to-update-labeling claims in the second amended complaint are dismissed.

■ Turning to the failure-to-update-labeling claims in the response, they are very different from claims in the second amended complaint. In Plaintiffs' response, they assert that Generics failed to update the labeling or communicate the contents of the most up-to-date FDA approved brand labels.[59] Quite simply, these claims are not supported by the second amended complaint. Therefore, the Court will not consider the novel failure-to-update-labeling claims that first appear in the response to the motion to dismiss.

### 4. Failure to Withdraw Metoclopramide From the Market

■ In Plaintiffs' response to the motion to dismiss, they argue that if Generics were prohibited by federal law from changing the label, they should have withdrawn metoclopramide from the market. First, the Court doubts that the second amended complaint supports this theory. The second amended complaint focuses on the alleged failure of Generics to adequately warn of the risks of long-term metoclopramide use. Second, the Court in *Mensing* found that state laws requiring the labels of generic manufacturers to differ from FDA-approved label conflicted with

federal law. Similarly, a state law requirement that the drug be completely withdrawn from the market, based solely on a theory that the federally mandated label was inadequate, would also impermissibly conflict with federal law and be preempted. Therefore, any claims based on Generics' failure to withdraw metoclopramide from the market are dismissed.

### 5. Design Defect

■ The second amended complaint asserts that there was a design defect. For a plaintiff to prevail on a design defect claim under Texas law, he "must prove that there is a safer alternative design."[60] "In the absence of a safer alternative, a product is not unreasonably dangerous as a matter of law."[61] Here, Generics were obliged to use a certain design. In *Mensing* the Supreme Court stated:

> [G]eneric drugs can gain FDA approval simply by showing equivalence to a reference listed drug that has already been approved by the FDA. This allows manufacturers to develop generic drugs inexpensively, without duplicating the clinical trials already performed on the equivalent brand-name drug. A generic drug application must also show that the [safety and efficacy] labeling proposed . . . is the same as the labeling approved for the [brand-name] drug.[62]

Therefore, Generics were required to produce a drug that was equivalent to the brand-name drug and were not free to unilaterally pursue a safer alternative design in order to comply with state law.

---

58. *PLIVA, Inc. v. Mensing,* — U.S. ——, 131 S.Ct. 2567, 2576, 180 L.Ed.2d 580 (2011).

59. *See, e.g.,* Dkt. No. 54 at pp. 7–9.

60. *Brockert v. Wyeth Pharm. Inc.,* 287 S.W.3d 760, 769 (Tex.App.-Hous. [14th Dist.] 2009, no pet.) (citing *Gen. Motors Corp. v. Sanchez,*

997 S.W.2d 584, 588 (Tex.1999); *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 384 (Tex. 1995)).

61. *Id.* (citing *Caterpillar,* 911 S.W.2d at 384).

62. *Mensing,* 131 S.Ct. at 2574 (internal citations and quotation marks omitted).

The design defect claim is thus preempted and therefore dismissed.

### 6. Participatory Liability

The Court has reviewed Plaintiffs' assertion that Generics are responsible for the brand manufacturers' actions on a theory of participatory liability under "The Restatement of Torts 2d § 876." [63] It is an "open question" whether Texas law would even allow liability to be imposed based on § 876,[64] and Plaintiffs have not directed the Court to any Texas cases holding a defendant liable under § 876. It is not the role of this Court, "*Erie*-bound," to expand Texas tort law.[65] Therefore, the Court dismisses any claims that are based on a § 876 theory that Generics should be held liable for the actions of brand manufacturers.

### 7. Fraud

Plaintiffs allege that Generics committed fraud. Quite simply, Generics allegations of fraud fall far short of Rule 9(b)'s particularity requirement. The Court dismisses the fraud claims.

### 8. Suppression of Evidence

Plaintiffs allege that Generics suppressed evidence.[66] The Court begins by noting that this claim is likely covered by the fraud analysis above. Nevertheless, out of an abundance of caution, the Court notes that it has found no Texas case recognizing a cause of action for suppres-

sion of evidence.[67] Therefore this claim is dismissed.

### 9. Deceptive Trade Practices—Consumer Protection Act

Plaintiffs allege that Generics violated the Deceptive Trade Practices—Consumer Protection Act ("DTPA").[68] The Court has already found that all the other claims in the complaint should be dismissed. After examining Plaintiffs' DTPA claims, it is clear that they are based on the same underlying allegations; Plaintiffs' DTPA claims are either conclusory or preempted in light of *Mensing*. Therefore, the DTPA claims are dismissed.

## IV. CONCLUSION

After reviewing the motion, supporting memorandum, response, record and controlling authorities, the Court **GRANTS** Generics' motion to dismiss in its entirety. The claims against Qualitest Pharmaceuticals, Inc. and Vintage Pharmaceuticals, LLC, are dismissed with prejudice.

IT IS SO ORDERED.

---

63. Dkt. No. 22 at ¶ 6.01.

64. *Navarro v. Grant Thornton, LLP,* 316 S.W.3d 715, 727 n. 12 (Tex.App.-Hous. [14th Dist.] 2010, no pet.) (citing *Juhl v. Airington,* 936 S.W.2d 640, 643 (Tex.1996)).

65. *City Pub. Serv. Bd. v. Gen. Elec. Co.,* 947 F.2d 747, 748 (1991).

66. Dkt. No. 22 at ¶¶ 4.16–4.21.

67. Even spoliation of evidence is not recognized as an independent tort in Texas. *Trevino v. Ortega,* 969 S.W.2d 950, 952–53 (Tex. 1998).

68. Dkt. No. 22 at ¶¶ 4.32–4.35.